```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA

SPENCER J. BLAND,                )
                                 )
              Plaintiff,         )
                                 )
                                 )  Case No. CIV-19-394-KEW
                                 )
COMMISSIONER OF THE SOCIAL       )
SECURITY ADMINISTRATION,         )
                                 )
              Defendant.         )
```

## OPINION AND ORDER

Plaintiff Spencer J. Bland (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that he was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 41 years old at the time of the ALJ's decision. He has a ninth-grade education and worked in the past as a welder. Claimant alleges an inability to work beginning on May 1, 2016, due to limitations resulting from manic depression, anxiety, severe mood swings, anger issues, personality disorder, social anxiety, and back and knee pain.

**Procedural History**

On May 23, 2017, Claimant protectively filed his applications for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's

applications were denied initially and upon reconsideration. On November 7, 2018, ALJ David W. Engel conducted an administrative hearing from Fort Smith, Arkansas. Claimant was present and testified. On January 3, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on September 26, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work, with additional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) reaching an improper RFC determination (with various subparts), and (2) finding he had the ability to perform the jobs identified by the ALJ at step five of the sequential analysis.

### RFC Assessment

In his decision, the ALJ found Claimant suffered from severe impairments of spine impairment, left knee pain, bipolar disorder, personality disorder, and post-traumatic stress disorder (PTSD). (Tr. 35). He determined Claimant could perform sedentary work with

additional limitations. Claimant was limited to two hours of walking and standing (combined total) of an eight-hour workday, with regular work breaks. He could sit for six hours (combined total) of an eight-hour workday, with regular work breaks. Claimant could climb ramps or stairs only occasionally and bend stoop, crouch, and crawl not more than occasionally. He was unable to climb ropes, ladders, and scaffolds, or work in environments with exposure to unprotected heights and dangerous moving machinery parts. Claimant was unable to perform tasks that require overhead reaching (for purposes of hand controls) more than occasionally and was unable to perform tasks requiring the use of foot pedals more than occasionally. (Tr. 37-38).

Regarding mental limitations, Claimant could understand, remember, and carry out simple instructions in a work-related setting and interact with co-workers and supervisors with routine supervision. He was unable to interact with the general public more than occasionally, regardless of whether in person or over the telephone. The ALJ also noted that Claimant "is afflicted with symptoms from a variety of sources to include moderate intermittent pain and fatigue, as well as mental disorders, all variously described, that are of sufficient severity so as to be noticeable to him at all times, but nevertheless is able to remain attentive and responsive in a work-setting and would be able to perform work assignments within the above-cited limitations. (Tr. 38).

5

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of document preparer and touch-up screener, both of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 46-47). As a result, the ALJ concluded Claimant was not under a disability from May 1, 2016, through the date of the decision. (Tr. 47).

Claimant argues the ALJ's mental RFC assessment fails to account for the severity of Claimant's mental limitations. He contends the ALJ failed to account for his mood, anger, and anxiety issues in the RFC. He also argues the ALJ's reasoning was "unsound" when finding he was "not persuaded" by mental limitations imposed by consulting psychologist, Theresa Horton, Ph.D. He next asserts that the ALJ's RFC assessment improperly relied upon his activities as a justification for finding his mental impairments less severe. Claimant further argues that the RFC did not include all his physical limitations. In conclusion, Claimant asserts the ALJ failed to properly evaluate his subjective complaints.

When assessing the RFC, the ALJ considered Claimant's mental impairments, including his mood swings, anger, and anxiety. The ALJ discussed Claimant's testimony that he could not shop due to problems with social anxiety. (Tr. 39). The ALJ discussed treatment records from Carl Albert Community Health Center ("Carl Albert") from May of 2017, wherein Claimant complained of depression,

6

anxiety, and mood swings. He was not taking medication and was cooperative and willing and accepting of treatment. (Tr. 39-40). Claimant returned for treatment at Carl Albert in July of 2017. He reported very anxious moods and depression. His affect was anxious. He was polite and cooperative. He denied homicidal ideation and hallucinations and there was no evidence of psychosis. His memory was intact. He was diagnosed with PTSD, rule out bipolar disorder, alcohol abuse, and polysubstance abuse in remission. When he returned in August of 2017, Claimant reported that he was sleeping better, was doing well, and was not irritated. (Tr. 40).

The ALJ also discussed treatment notes from Carl Albert from November of 2017 through April of 2018. Claimant reported in November of 2018 that he was off his medication and did not think he needed medication. When he returned in April of 2018, he again indicated he was off his medications. His mood was labile and his affect was congruent and appropriate. Claimant reported that he drank and even made his own alcohol. He gardened and lived a "very active lifestyle." (Tr. 42).

The ALJ further considered Claimant's consultative examination with Theresa Horton, Ph.D. Dr. Horton examined Claimant on July 25, 2017. In addition to other complaints, Claimant complained to Dr. Horton of anxiety, mood swings, anger issues, and social anxiety. He reported to Dr. Horton that he had no tolerance to be around people, did not do well socially, and

7

had a lot of problems with anger and anxiety. Claimant explained that he had gotten into physical altercations with co-workers and liked to be by himself and not around other people. (Tr. 41, 363-64). When addressing the reliability of her report, although Dr. Horton noted Claimant "appear[ed] to be a reliable historian[,]" her report was "based on facts as presented by the [C]laimant, in addition to any information provided by Social Security for this individual." She further stated that the report was "based principally on the validity of the self-report by the [C]laimant." (Tr. 363).

   Upon examination, Claimant exhibited a friendly attitude and his cooperation was appropriate during the exam. He was capable of communicating in the setting, was socially appropriate, and was mostly calm and euthymic. His affect was content congruent and expressive. He had appropriate judgment, but his insight was poor. Dr. Horton noted Claimant could manage benefits if awarded. She diagnosed Claimant with unspecified mood disorder with anxious and depressed features and Cluster B and C personality traits. Dr. Horton determined Claimant "appears capable of understanding, remembering and managing most simple and complex instructions and tasks consistent with previous employment as a welder." She noted "[h]e likely does not cope well with stressors, including engaging appropriately with coworkers and supervisors." She further determined that "[h]e likely does best when working in areas to

himself, and likely does not adjust as well under pressure in areas that are fast paced and/or densely populated." (Tr. 40-41, 363-66).

Claimant contends that the ALJ's reasoning for finding Dr. Horton's opinion unpersuasive is "unsound." Because Claimant filed her claims after March 27, 2017, the medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, he must "articulate" in his decision "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§

9

404.1520c(c), 416.920c(c). The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Court finds no error in the ALJ's evaluation of Dr. Horton's opinion. In conjunction with the regulations, the ALJ evaluated Dr. Horton's opinion and determined it was not consistent with or supported by her examination. He referenced that she found Claimant "would not cope well when engaging appropriately with coworkers and supervisors." He then noted that on examination, she "found [Claimant] to be socially appropriate and was mostly calm and euthymic[.]" The ALJ noted this indicated her opinion was partly based on Claimant's self-reports and not his presentation. He also noted that Dr. Horton "did not provide her opinion in vocationally relevant terms." (Tr. 41).

The ALJ properly considered the evidence of Claimant's mood swings, anxiety, and anger. These reports were primarily made by

10

Claimant to Dr. Horton or by Claimant in his testimony at the administrative hearing. Because the ALJ determined Dr. Horton's opinion was not persuasive, he did not include limitations associated with Claimant's complaints in the RFC.

Moreover, the ALJ's consideration of Claimant's activities of daily living was merely one of several factors he considered when evaluating Claimant's symptoms and their consistency with the evidence. He did not cite the activities solely to show that Claimant could perform full-time work. There is no error in this regard.

Claimant also asserts that the ALJ failed to include all his physical limitations in the RFC. Specifically, he contends that the ALJ should have included additional limitations in reaching associated with pain and limited range of motion in his neck and right upper extremity and atrophy in his right arm.

The record reveals that the ALJ appropriately considered Claimant's neck and right shoulder pain. He discussed the consultative examination conducted by Christopher Sudduth, M.D., on November 16, 2017. Regrading physical complaints, Claimant reported left knee pain, right shoulder pain, and neck pain. Although Claimant was in acute distress during his examination, his neck did not exhibit any thyromegaly, thyroid nodule, lymphadenopathy, or mass appreciated. Dr. Sudduth noted Claimant's right upper extremity was notably smaller than his left upper

11

extremity because of the cervical spine. Upon examination, Claimant's muscle strength was 5/5 in his upper and lower extremities. His sensory examination was normal and there was no erythema, effusion, or deformity. His hands and fingers appeared normal. Dr. Sudduth observed Claimant "button and unbutton a shirt, pick up and grasp a pen and write a sentence and lift, carry and handle personal belongings." Claimant was able to squat and rise from position with ease. He had a full range of motion through all areas, except he exhibited a decreased range of motion with cervical spine extension and with right rotation. He also suffered pain. (Tr. 41-42, 386-93).

The ALJ determined that Claimant had the physical RFC to perform sedentary work, and in addition to other limitations, he determined Claimant was "unable to perform tasks requiring overhead reaching [for purposes of hand controls] more than occasionally[.]" (Tr. 37). Thus, the ALJ adequately accounted for limitations in the RFC associated with Claimant's neck and right upper extremity pain. The Court will not re-weigh the evidence or substitute its judgment for that of the Commissioner. *See Casias*, 933 F.2d at 800; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Claimant further argues that the ALJ failed to properly evaluate his subjective complaints. He takes issue with certain factors relied upon by the ALJ, including Claimant's sporadic

12

employment, his non-compliance with his medication regimen, and his variance in reports of his medical history and drug and alcohol abuse. He maintains that these inconsistencies are manifestations of Claimant's impairments and detail the impact of his mental impairments on his functioning.

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of his evaluation of Claimant's pain and other symptoms, the ALJ noted the two-step process for the evaluation of symptoms set forth in Social Security Ruling 16-3p and the

requirements under 20 C.F.R. § 416.1529. (Tr. 38). After thoroughly summarizing the medical evidence and other evidence in the record, as well as Claimant's testimony regarding his symptoms, the ALJ determined Claimant's medically determinable impairments could reasonably cause his alleged symptoms, but he found that Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with such evidence. (Tr. 38-42). The ALJ considered several factors when evaluating Claimant's symptoms. He noted Claimant's sporadic work history prior to his alleged disability onset date, inconsistencies in his reporting of when his mental health issues began, his report of severe physical limitations was inconsistent with his "very active lifestyle," inconsistencies in his reports of alcohol and drug use, activities inconsistent with his reports, as well as other inconsistencies in the record. He noted that the "enormous amount of inconsistencies cast a shadow of doubt on the alleged severity and the impact on the [C]laimant's ability to participate in SGA." (Tr. 42-45). Because the ALJ thoroughly discussed the various inconsistencies in the medical evidence and the lack of support for Claimant's subjective complaints, no error is ascribed to the ALJ's evaluation.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287

F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment is supported by substantial evidence. This Court finds no error in the RFC determination.

### Step Five Determination

Claimant argues that because the RFC was incomplete it could not form the basis for the VE's testimony that Claimant could perform other jobs which existed in significant numbers in the national economy.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's

15

decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

The Court finds no error in the ALJ's questioning of the VE. The hypothetical questions to the VE included those limitations found to exist by the ALJ and included in the RFC. *See Qualls*, 206 F.3d at 1373 (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment.") (citation omitted).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 31st day of March, 2021.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE